IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENJAMIN MOULTON, | : | CIVIL ACTION NO. **3:CV-12-0922** |
| Petitioner | : | (Judge Nealon) |
| v. | : | (Magistrate Judge Blewitt) |
| MARY SABOL, WARDEN, | : | |
| Respondent | : | |

## REPORT & RECOMMENDATION

**I. PROCEDURAL BACKGROUND.**

On May 17, 2012, Petitioner Benjamin Moulton, a detainee of the Bureau of Immigration and Customs Enforcement ("ICE") filed, *pro se*, a five-page, typed petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1).[1] Petitioner attached no exhibits to his habeas petition. Petitioner paid the filing fee. (Doc. 1-1). Named as the sole Respondent is Mary Sabol, Warden of York County Prison ("YCP"), where Petitioner is currently confined.[2] (Doc. 1, p. 1).

---

[1] This Court has venue and jurisdiction with respect to Petitioner's habeas petition challenging his continued physical custody by ICE at YCP. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004) (finding that a petition pursuant to 28 U.S.C. § 2241 challenging an alien's present physical custody in the United States should be filed in the district where the petitioner is confined); *see also Meyers v. R. Martinez*, 402 F. App'x 735 (3d Cir. 2010); *Majano v. Decker*, Civil Action No. 3:CV-11-1530, 2012 WL 1268693, at *1 (M.D. Pa. Mar. 20, 2012).

[2] Petitioner correctly names Warden Sabol as the Respondent in his § 2241 habeas petition. *See* 28 U.S.C. §§ 2242, 2243. *See also Padilla*, 542 U.S. at 434 (alteration in original) ("The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'"); *Stanko v. Obama*, 434 F. App'x 63, 65 n.1 (3d Cir. 2011); *Griffin v. Ebbert*, Civil Action No. 3:07-CV-2239, 2009 WL 866844, at *1 (M.D. Pa. Mar. 30, 2009).

On May 21, 2012, we issued a Show Cause Order directing the Clerk of Court to serve the habeas petition on Respondent and directing Respondent to respond to it. (Doc. 2). On June 12, 2012, we issued an Order noting that due to a clerical error, counsel for Respondent was not added to the docket or provided with a copy of the Show Cause Order until June 12, 2012. (Doc. 3). We therefore ordered that Respondent had twenty (20) days from June 12, 2012, to file her Response. (*Id*.). Respondent timely filed her Response to the habeas petition with Exhibits (Exs. A-E) on July 2, 2012. (Doc. 4). After being granted an extension of time, Petitioner filed his Traverse on July 23, 2012. (Doc. 7).

Petitioner Moulton's habeas petition is now ripe for disposition.[3]

## II. FACTUAL BACKGROUND.

In his habeas petition, Petitioner Moulton states that he is a Liberian citizen who was admitted to the United States on June 8, 2000, *via* New York City, New York, "as a lawful Permanent Resident." (Doc. 1, p. 2). Petitioner asserts that he has not returned to Liberia since that time. (*Id*.). According to Petitioner, he has been "formally educated in the U.S. and has been a tax paying resident for his entire residence in the United States." (*Id*.). Petitioner additionally admits that he was convicted on October 10, 2009, in the Delaware County Court of Common Pleas "for the offense of Forgery-Alter writing (in violation of Title 18 Section 4101 Subsection [(a)(1)] of the Pennsylvania Crime Code for which a sentence of 27 days to 12 months confinement was imposed." (*Id*.).[4]

---

[3]The undersigned has been assigned to this case for issuance of a Report and Recommendation pursuant to 28 U.S.C. §636(b).

[4]*See* 18 Pa. Cons. Stat. Ann. § 4101 (West 2003).  *See also* Doc. 4-1, p. 3.

In her Response, Respondent adds that when Petitioner was admitted as a lawful permanent resident, he was classified as "SE3, child of an employee of the United States government abroad." (Doc. 4, p. 2 citing Notice to Appear, Doc. 4-1, p. 3 & p. 33). Respondent confirms *via* Petitioner's Pennsylvania state court records that Petitioner was convicted in the Delaware County Court of Common Pleas on October 10, 2009, of Forgery, a third degree felony, and sentenced to twenty-seven (27) days to twelve (12) months imprisonment. Petitioner also was ordered to be on probation for four (4) years after he served his prison sentence. (Doc. 4, p. 2 citing Petitioner's state court records, Doc. 4-1, pp. 6-31; Record of Deportable/Inadmissible Alien, Doc. 4-1, pp. 32-35). Respondent additionally states that Petitioner was convicted of Possession of Marijuana in the Philadelphia County Court of Common Pleas on September 8, 2010, for which he was ordered to pay a fine and costs. (Doc. 4, p. 2 citing Doc. 4-1, pp. 32-35).

On March 11, 2011, ICE lodged a detainer against Petitioner.   (Doc. 4-1, p. 35).

Respondent asserts that on August 18, 2011, ICE "commenced removal proceedings against Moulton by issuing a Notice to Appear." (Doc. 4, p. 2 & Doc. 4-1, pp. 3-4). Under the Immigration and Nationality Act ("INA"), Petitioner was found to be removable due to "commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers which have been altered for which the term of imprisonment is at least one year." (*Id*. at 2-3).

According to Respondent's evidence, an Immigration Judge ordered that Petitioner be removed from the United States to Liberia on September 1, 2011, and Petitioner "reserved his right to appeal until October 3, 2011. (*Id*. at 3 citing Order of Immigration Judge, Doc. 4-1, p.

36). On April 3, 2012, pursuant to 8 C.F.R. § 241(a)(1)(C), Petitioner was given a custody review by ICE, in which ICE decided to continue Petitioner's detention "because a travel document will be issued in the near future, his removal from the United States is imminent, and he is a threat to society due to his criminal conviction[s]." (Doc. 4, p. 3 citing Decision to Continue Detention, Doc. 4-1, p. 37). Specifically, the ICE official stated in his April 3, 2012 Decision that Petitioner 's "removal to Liberia is expected to occur in the reasonably foreseeable future; therefore you are to remain in ICE custody." (*Id*.).

Thus, there is no dispute that Petitioner Moulton is subject to a final removal order as of October 4, 2011. (Doc. 4-1, p. 37 & Doc. 7, p. 1).

### III. PETITIONER'S HABEAS PETITION CLAIMS.

Petitioner avers that his current detention in YCP under ICE's detainer is "unconstitutional" and "unreasonably prolonged." (Doc. 1, p. 3). According to Petitioner, the Liberian Consulate visited YCP on January 25, 2012, to discuss "getting a travel document" with an ICE official, and "up to now [ICE] has not received nothing from the Liberia consulate." (*Id*. at 5). Petitioner states that he "has been in Detention over six months [*i.e.* over 15 months] and **(ICE/DHS)** is still holding on to Petitioner and in petitioner [sic] last [custody] review it came back saying that petitioner will not be released." (*Id.)* (emphasis in original). Petitioner thus concludes that he is not likely to be removed to Liberia in the foreseeable future. (*Id*.). Petitioner asserts that he has exhausted all available administrative remedies, and Respondent does not argue otherwise. (*Id*. at 2).

Petitioner reminds that Court that mandatory detention prior to removal becomes unconstitutional when it extends beyond "the brief and limited period reasonably necessary to accomplish removal by the Constitution and statutory purposes of the [INA]." *(Id.* at pp. 3-4 citing *Alli v. Decker*, 644 F. Supp. 2d 535 (M.D. Pa. 2009)). Petitioner writes of the Middle District of Pennsylvania:

> If an alien detained pursuant to § 1226(c) makes a showing via habeas petition [that his detention] is no longer reasonable, the alien must be afforded a hearing before the habeas court at which the government bears the burden of justifying continued detention based on traditional bail factors such as the aliens [sic] risk of flight and potential danger to the community. The Court adopts a reasonableness standard administered by federal courts because this approach avoids constitutional concerns while working the least amount of damage to the statutory scheme Congress created.

(Doc. 1, p. 4).

Petitioner also claims that his Fifth Amendment due process rights have been violated since he is not being given meaningful custody review with an individualized determination as to whether he poses a safety or flight risk.

As relief, Petitioner requests that this Court issue a Writ of Habeas Corpus and direct Respondent "to immediately release Petitioner from custody and enter preliminary and permanent injunctive relief enjoining [Respondent] from further unlawful detention of petitioner." (*Id.* at 5).

To the extent Petitioner may be deemed as raising cognizable habeas claims pursuant to § 2241, this Court has jurisdiction over such action. *See Kitano v. Smith*, No. Civ. 1:CV-05-0153, 2006 WL 42177, at *2 (M.D. Pa. 2006) (citing *Gomori v. Arnold*, 533 F.2d 871, 874-75 (3d Cir. 1976)) ("A habeas petition filed in the district where the petitioner is confined provides

a remedy to challenge the effect of events subsequent to imposition of his sentence."); *see also Santiago v. Ebbert*, Civil No. 1:CV-12-0383, 2012 WL 2367094, at *3 (M.D. Pa. June 21, 2012).

**IV. DISCUSSION**.

We agree with Respondent and find that Petitioner Moulton's present § 2241 habeas petition should be denied because Petitioner's current post-removal order detention is constitutional.

In her Response, Respondent primarily argues that Petitioner has not demonstrated that his removal is not reasonably foreseeable. (Doc. 4, p. 3). Respondent asserts that under §241 of the INA, ICE may "detain an alien for 90 days (the removal period) following a final order of removal." (*Id*. at 3-4 citing 8 U.S.C. § 1231(a)(1)(A)). According to Respondent, the Supreme Court has held that a "presumptively reasonable" detention subsequent to a final order is six (6) months. (Doc. 4, p. 4 citing *Zadvydas v. Davis*, 533 U.S. 678, 700-01 (2001)). Once an alien has been detained for longer than six months after his removal order is finalized, he has an opportunity to establish that his deportation is not reasonably likely to occur in the reasonably foreseeable future. (Doc. 4, p. 4 citing *Zadvydas*, 533 U.S. at 701). If the alien establishes that his deportation is not reasonably likely to occur in the reasonably foreseeable future, the government then bears the burden of demonstrating that the deportation is reasonably likely to occur in the reasonably foreseeable future. (*Id*.).

While Respondent does not dispute that Petitioner has been detained by ICE for longer than six months or that his detention is "no longer presumptively reasonable," she does contend that Petitioner has not met his burden of showing "that there is no significant likelihood of his removal within the reasonably foreseeable future." (*Id*.). Respondent asserts that Petitioner's

showing that he has been in detention for more than six months is insufficient to demonstrate that his deportation will not likely occur with the foreseeable future; rather, his showing merely grants him the opportunity to make such a demonstration. (Doc. 4, pp. 4-5). As support, Respondent cites to the following:

> See Akinwale v. Ashcroft, 287 F.3d 1050, 1051-1052 (11th Cir. 2002) (holding that "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months *but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future*." (emphasis added)); Owino v. Napolitano, No. 09-56975, slip op. (9th Cir. Jul. 7, 2010) (not for publication) (opinion attached) (holding the district court did not err by determining "that Owino failed to provide 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future'") (quoting Zadvydas, 533 U.S. at 701)); see also Fahim v. Ashcroft, 227 F.Supp.2d 1359, 1365 (N.D. Ga[.] 2002) (holding that "[w]hile an alien's detention will no longer be presumed to be reasonable after six months, there is nothing in Zadvydas which suggest that the Court must or even should assume that any detention exceeding that length of time is unreasonable.").

(Doc. 4, p. 5).

As mentioned, on March 11, 2011, ICE detained Petitioner at YCP and he has remained in ICE's custody to the present day. (Doc. 4-1, p. 35).

In *Akinsehinwa v. Donate*, 2008 WL 2951072, *3 (M.D. Pa.), the Court stated:

> Detention, release, and removal of aliens ordered removed is governed by § 241 of the Act, 8 U.S.C. § 1231, as amended. Under § 1231(a), the Attorney General has ninety days to remove an alien from the United States after his order of removal, during which time detention is mandatory.
> The removal period under section 1231 begins on the latest of (1) the date the order of removal becomes administratively final; (2) if the removal order is judicially reviewed and if a court orders a stay of the alien's removal, the date of the court's final order; and (3) if the alien is confined (except under an immigration process), the date the alien is released from confinement. 8 U.S.C. § 1231(a)(1)(B).

7

*See also Hossain v. Sabol*, 2010 WL 378515 (M.D. Pa.); *Crisostomos v. DHS*, Civil No. 10-0789, M.D. Pa.; *Rodney v. Lowe*, 2010 WL 1779895, *3 (M.D. Pa. 4-30-10)("Detention, release, and removal of aliens ordered removed is governed by the provisions of 8 U.S.C. § 1231.).

As mentioned, there is no dispute that Petitioner is subject to a final Removal Order and that he has now been detained in ICE custody for over 16 months. However, we agree with Respondent that simply because Petitioner's removal has not yet occurred, he is not automatically entitled to be released on supervision while he awaits his removal to Liberia and that Petitioner has not satisfied his burden of showing that ICE will not be able to remove him in the reasonably foreseeable future.

Once an alien is ordered removed by ICE, the Attorney General has ninety (90) days to effectuate the removal of the alien. This is called the removal period. 8 U.S.C. § 1231 (a)(1)(A). Under the statute:

(B) The removal period begins on the latest of the following:

(i) **The date the order of removal becomes administratively final.**

(ii) If the removal order is judicially reviewed and if a court orders a stay of
 the removal of the alien, the date of the court's final order.
(iii) If the alien is detained or confined (except under an immigration
 process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B) (Emphasis added).[5] *See French v. Ashcroft*, 2005 WL 1309062 at *2 (M.D. Pa.); *Jurado-Delgado v. Hogan*, 2007 WL 1490717, *3 (M.D. Pa.).

---

[5]During the removal period, the Attorney General must detain the alien. 8 U.S.C. § 1231(a)(2). If the alien is not removed during the removal period, the Attorney General has two options -- supervised release (8 U.S.C. §§ 1231(a)(3)) or, at times, continued detention (8 U.S.C. §1231(a)(6)).

8

In *Zadvydas*, 533 U.S. at 689, the Court held that "the statute [§241 (a)(6)], read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id*. at 689. "At the conclusion of the removal period, if the alien remains in the United States, his post-removal-period detention may be continued only as long as 'reasonably necessary' to effectuate his removal from the United states." *Jurado-Delgado v. Hogan*, 2007 WL 1490717, *3 (citing *Zadvydas*, 533 U.S. at 689).

In *Rodney v. Mukasey*, 2009 WL 2430885, *3 (3d Cir.), the Third Circuit stated:

> The Attorney General has 90 days to remove Rodney from the United States after his final order of removal. 8 U.S.C. § 1231(a)(1)(A). However, in *Zadvydas,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653, the Supreme Court interpreted 8 U.S.C. § 1231(a)(6) to authorize post-removal order detention of an alien convicted of an aggravated felony to a period reasonably necessary to bring about the alien's removal, generally no more than six months. *Id*. at 700-01.FN4 After six months, the alien is eligible for conditional release if he can demonstrate that there is "no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701. "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months." *Id*.
>
> FN4. The statute provides: "An alien ordered removed who is ... removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title ... may be detained beyond the removal period...." 8 U.S.C. § 1231(a)(6).

On September 1, 2011, the Immigration Judge ordered Petitioner to be removed to Liberia and Petitioner reserved his right to appeal until October 3, 2011. Petitioner did not file an appeal. Thus, Petitioner's removal order became administratively final on

9

October 4, 2011, which is the start of his removal period. (See Order of the Immigration Judge, Doc. 4-1, p. 36 & Doc. 4-1, p. 37).

Based on the record detailed above, we agree with Respondent that Petitioner Moulton has not offered any evidence to show that there is no significant likelihood of his removal to Liberia within the reasonably foreseeable future. In fact, as stated, Petitioner admits that the Liberia Consulate went to YCP on January 25, 2012, and spoke to ICE officials about issuing a travel document for him. (Doc. 1, p. 5 & Doc. 7, p. 1). Also, in Petitioner's recent April 3, 2012 custody review, the ICE official found that Petitioner's removal to Liberia was expected to occur in the reasonably foreseeable future. (Doc. 4-1, p. 37). The ICE official also indicated that the decision to continue Petitioner's detention pending his removal did "not preclude [Petitioner] from bringing forth evidence in the future to demonstrate a good reason why [his] removal is unlikely." (*Id.)*. As stated, we agree with Respondent that Petitioner failed to show there is no significant likelihood of his removal to Liberia within the reasonably foreseeable future.

Respondent additionally contends that even if Petitioner did meet his burden under *Zadvydas*, his habeas petition should still be dismissed because "there is reason to believe that his removal is likely in the reasonably foreseeable future." (Doc. 4, pp. 5-6 ). Respondent indicates that she has no reason to believe that Petitioner's travel document will not be issued for his removal, as ICE "continues to work on the travel documents from Liberia and expects them to be issued." (*Id.* at 6 citing Decision to Continue Detention, Doc. 4-1, p. 37). As mentioned, Petitioner himself admits that he was interviewed by the Liberian Consulate at YCP on January 25, 2012. (Doc. 7, p. 1).

10

Further, Respondent asserts that Petitioner's due process rights are being protected, as he recently received a custody review on April 3, 2012, while in ICE detention. (Doc. 4, pp. 6-7 & Doc. 4-1, p. 37).  Respondent submits that Petitioner's claims under § 2241 are restricted to whether ICE has violated the Constitution, the statutory laws that govern immigration, or ICE's own regulations. (Doc. 4, p. 6).  Respondent  cites to  *Liang v. I.N.S.*, 206 F.3d 308, 314 (3d Cir. 2000), *Sandoval v. Reno*, 166 F.3d 225, 238 (3d Cir. 1999), *Chmakov v. Blackman*, 266 F.3d 210, 214 (3d Cir. 2001), *I.N.S v. St. Cyr*, 533 U.S. 289 (2001), *Chong v. Dist. Dir., I.N.S.*, 264 F.3d 378 (3d Cir. 2001), and  *Henderson v. I.N.S*, 157 F.3d 106 (2d Cir. 1998).  According to Respondent, Petitioner has not shown, and cannot show, that ICE violated any of his rights with respect to his custody reviews or that he is not receiving the process due an alien under the same circumstances. (Doc. 4, pp. 6-7).

Respondent concludes that Petitioner's detention is thereby constitutional "because he has failed to show that his removal is not reasonably foreseeable" and requests that his habeas petition be denied, as his "removal to Liberia is imminent." (*Id*. at 7).

We agree with Respondent that Petitioner's current detention at YCP and his custody reviews are  constitutional and, we will  recommend that Petitioner's habeas petition be denied.

As discussed, we agree with Respondent that because a final removal order has been entered in Petitioner's case, his detention is now governed by 8 U.S.C. § 1231(a). *See Ayodele v. Holder*, Civil No. 3:CV-11-0612, 2011 WL 3423772, at *2 (M.D. Pa. Aug. 4, 2011).

In *Zadvydas*, the Supreme Court held:

> A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person ... of ... liberty ... without due process of law." Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects. *See Foucha v. Louisiana*, 504 U.S. 71, 80 [ ] (1992). And this Court has said that government detention violates that Clause unless the detention is ordered in a *criminal* proceedings with adequate procedural protections, see *United States v. Salerno*, 481 U.S. 739, 746 [ ] (1987), or, in certain special and "narrow" nonpunitive "circumstances," *Foucha*, *supra*, at 80, [ ] where a special justification, such as harm-threatening mental illness, outweighs the "individual's constitutionally protected interest in avoiding physical restraint." *Kansas v. Hendricks*, 521 U.S. 346, 356 [ ] (1997).

533 U.S. at 690.

In interpreting the Supreme Court's decision in *Zadvydas*, the Third Circuit has held:

> Under § 1231(a), the Attorney General has 90 days to remove [the petitioner] from the United States after his final order of removal. 8 U.S.C. § 1231(a)(1)(A). The Supreme Court interpreted § 1231(a)(6) to authorize post-removal order detention of an alien convicted of an aggravated felony to a period reasonably necessary to bring about the alien's removal, generally no more than six months. *Zadvydas v. Davis*, 533 U.S. 678, 700-01, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). After six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence to rebut that showing." *Id*. at 701, 121 S.Ct. 2491. "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months." *Id*.

*Leslie v. Attorney Gen. of U.S.*, 363 F. App'x 955, 958 (3d Cir. 2010).

It is clear that, in the instant case, Petitioner's presumptive six-month period has expired, as the start of his removal period was October 4, 2011. (Doc. 4-1, p. 37). Also, it is undisputed that Petitioner has now been detained by ICE in toto for over fifteen (15) months and that his last

12

custody review took place approximately four (4) months ago on April 3, 2012. (Doc. 4-1, p. 37).

In response to *Zadvydas*, ICE adopted 8 C.F.R. § 241.4(k), which provides that prior to the expiration of the ninety (90) day removal period, the appropriate ICE district director shall conduct a custody review for aliens who cannot be removed during the prescribed period and make a determination as to whether the detainee should be released pending removal. When release is denied, the district director may retain responsibility for the alien for up to three months or refer the alien to ICE's Headquarters Post-Order Detention Unit ("HQPDU"). 8 C.F.R. § 241.4(k).

In the instant action, as stated, ICE recently conducted a custody review of Petitioner on April 3, 2012, and determined that he should remain in custody, as his removal to Liberia was "expected to occur in the reasonably foreseeable future" and since "[a] review of [Petitioner's] criminal history reflects that [he has] multiple arrests, and convictions for Forgery-Alter Writing, and Possession of Marijuana." Further, Petitioner was advised that he could submit evidence to ICE in the future to demonstrate a good reason why his removal to Liberia was unlikely.   (Doc. 4-1, p. 37).   Thus, Petitioner has been afforded all of his due process rights.

We find that although the six-month presumptive period has passed and Petitioner's post-removal order detention has continued for approximately ten (10) months (*i.e.* October 4, 2011 to August 4, 2012), Petitioner is not automatically entitled to be released. *See Zadvydas*, 533 U.S. at 701. As Respondent points out, Petitioner fails to provide any evidence that Liberia has denied him as a citizen or that Liberia will refuse to issue the appropriate travel documentation for him in the reasonably foreseeable future.

Petitioner has a burden "'to provide [ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future....'" *Barenboy v. Attorney Gen. of U.S.*, 160 F. App'x 258, 261 n. 2 (3d Cir. 2005) (alteration in original) (quoting *Zadvydas*, 533 U.S. at 701). If Petitioner meets this burden, then the burden will shift to Respondent, who must sufficiently produce evidence to rebut Petitioner's showing. *Id*. This Court has found: "Not every alien must be released after six months. An alien may still be detained beyond six months 'until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Peynado v. Bur. of Immigration and Custom Enforcement*, Civil Action No. 1:08-CV-2107, 2009 WL 136749, at *3 (M.D. Pa. Jan. 20, 2009) (quoting *Zadvydas*, 533 U.S. at 701).

If Petitioner believes that he is unlikely to be removed in the near future, he may request that the Department of Homeland Security review his case. See 8 C.F.R. § 241.13. He may also file another habeas petition if he can show that his removal to Liberia is not likely to occur in the reasonably foreseeable future. At the present time, however, we agree with Respondent that Petitioner has not presented any evidence to demonstrate, with good reason, why his removal is unlikely to occur in the reasonably foreseeable future or that Liberia will not issue travel documentation for him. In fact, as we have indicated, Petitioner himself states that the Liberian Consulate visited YCP on January 25, 2012, to discuss travel documentation for Petitioner, which indicates that this documentation is likely forthcoming in the reasonably foreseeable future. (Doc. 1, p. 5 & Doc. 7, p. 1).

Accordingly, we will recommend that Petitioner Moulton's habeas petition (Doc. 1) be denied, as Petitioner has not met his burden of establishing that his removal is not likely to occur in

14

the reasonably foreseeable future.

**V. RECOMMENDATION.**

Based upon the foregoing, it is respectfully recommended that Petitioner Moulton's Petition for Writ of Habeas Corpus (**Doc. 1**) be denied.

                                                        s/ Thomas M. Blewitt  
                                                       **THOMAS M. BLEWITT**  
                                                       **United States Magistrate Judge**

**Dated: August 6, 2012**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENJAMIN MOULTON, | : | CIVIL ACTION NO. **3:12-CV-0922** |
| Petitioner | : | (Judge Nealon) |
| v. | : | (Magistrate Judge Blewitt) |
| MARY SABOL, WARDEN, | : | |
| Respondent | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 6, 2012.**

Any part may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections, which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witness or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections may constitute a waiver of any appellate rights.

                                    **s/ Thomas M. Blewitt**
                                    **THOMAS M. BLEWITT**
                                    **United States Magistrate Judge**

**Dated: August 6, 2012**